IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                     CR. NO. S-07-0309 GGH

    vs.

MICHAEL GALLOCK,

    Defendant.                  ORDER

_____/

*Introduction*

        Defendant, Michael Gallock, has been charged with a Class A misdemeanor, possession of marijuana. The charge resulted from a search of his vehicle at Beale Air Force Base, and occurred at the entry point – a routine event for contractors and employees. While looking through the center console, Beale military police searched a small eyeglass case where they located a small amount of marijuana.

        Gallock brings a motion to suppress the finding of the marijuana based on his belief that this "administrative search" exceeded the permissible scope of such a search. At hearing the undersigned indicated his tentative intent to deny the motion; that intent is confirmed herein.

\\\\\

*Discussion*

Gallock does not take issue with the search *per se*. And, the government persuasively argues that this defendant impliedly consented to the search by virtue of his entering a military base with warning that those who entered subjected their vehicle and person to searches. See cases cited at pages 4-8 inclusive of the Government's Opposition.[1] The issue here centers about the scope of the search. That is, Gallock concedes the propriety of the search insofar as the search is related to finding weapons, or theft of government property, but challenges the search insofar as it was conducted to ascertain the possession of controlled substances. According to Gallock, if the scope of the search had been properly constrained, the military police would never have looked in the eyeglass case located in the center console of the vehicle. The government argues implicitly that no limitations whatsoever should be placed on the entry search. The government's apparent argument that contraband could be construed as authority to search for evidence of *any* unlawful conduct, no matter how unrelated to Air Force business, goes further than even the Air Force suggests.[2]

The search here is no different in principle from other types of "entry point" searches whether or not the administrative search is justified with an implied consent. In either case, the scope of the search cannot exceed the purpose for which the warrantless search is justified. United States v. Bulacan, 156 F.3d 963, 968 (9th Cir. 1998) ("The scheme is only valid if 'the search serves a narrow but compelling administrative objective,' and 'the intrusion is as limited....as is consistent with satisfaction of the administrative need that justifies [it].'") Even

---

[1] The undersigned understands that airport screening searches do not require consent of any type, and that the Ninth Circuit has overruled cases that suggested the need for express or implied consent. United States v. Aukai, 497 F.3d 955, 961-62 (9th Cir. 2007) (en banc). Thus, one entering an airport screening area cannot stop the search by "revoking consent." However, the court did not *understand* to overrule application of implied consent to search law in other contexts.

[2] Also, the means by which the search is carried out is not without limitation. No one entering an Air Force base impliedly consents to strip searches, nor to having his vehicle dismantled in a search for contraband.

2

the government appeared to concede at oral argument that the military police would be hard pressed to utilize their checkpoint to search for evidence of private party stock insider trading, a crime with no general relation to Air Force activities. As is the case in many areas of criminal law, a rule of reason must be employed even for exceptions to the search-with- warrant requirement. Morgan, 323 F.3d at 781. And, the military entry point search must be limited to those areas of the person or vehicle likely to conceal the contraband prohibited from the base.

Defendant's error is in assuming that if a check for weapons alone is the rule for government buildings, Bulacon. supra, thus it must be the rule for military bases as well. The undersigned has seen no authority for such a narrow proposition, and the case law permits different search scopes, even based on dual purposes, depending on the nature of the checkpoint. See e.g., United States v. Soto-Camacho, 58 F. 3d 408 (9th Cir. 1995) (border checkpoint search based on need to ascertain immigration status and need to thwart drug trafficking upheld).

The local Air Force regulation governing the scope of the search permits military police to conduct entry point searches "to deter theft of government property and to prevent the transportation of contraband onto and off the installation." BABI31-101, 14 May 2002, § 5.7.1.1, Govt. Exhibit 3. See also AFI 31-201, § 5.2: "Controlling entry to the installation is a fundamental security police task. We control entry...to help protect the resources entrusted to the Air Force." However, although "contraband" is a broad word, it cannot exceed the scope of items which would in some way significantly disrupt the functioning of the airbase.

The court need not stretch to understand that the Air Force has a legitimate and compelling interest in keeping controlled substances off its premises.

> It cannot be gainsaid that the need for this particular search was exceptionally compelling. Drug use among the military poses obvious and grave concerns for us all, and any hint that armed service members are engaged in unauthorized use of alcohol or controlled substances must be vigilantly pursued .

Egloff v. New Jersey Air Nat. Guard, 648 F. Supp. 1275, 1280 (D.N.J. 1988).

Air Force functions at a base such as Beale include flight, ground control and maintenance of aircraft and other sophisticated equipment. Training with dangerous weapons takes place. Private contractors assist the Air Force in its mission. Air Force bases and use of controlled substances thereon are incompatible in terms of the danger to mission, life, and property which would be risked by application of civilian controlled substance probable cause search rules to entry points on these insular bases. Nor must the Air Force implement a plethora of different rules and standards for checkpoint searches depending on the sophistication of every job, for employees working those jobs, which takes place on an Air Force base. Such would be unworkable.

Whatever "contraband" may be beyond the proper scope of an entry point search at a military base, controlled substances fall far short of that outside parameter. Upon entering the base at Beale, defendant impliedly consented to a search of his vehicle, including the center console and items such as the eyeglass case contained therein.[3] The scope of the search was reasonable.[4]

*Conclusion*

Defendant's motion to suppress is denied. Trial was set in court for December 11, 2007. The parties shall confirm for trial, or appear for change of plea, Tuesday, December 4, 2007.

DATED: 11/20/07                    /s/ Gregory G. Hollows
                                   _____
                                   UNITED STATES MAGISTRATE JUDGE

gallock.ord2

---

[3] There is no question here concerning a refusal by Gallock to permit his car to be searched. Whether defendant could choose to exit the base without being searched is not at issue in this case.

[4] The court need not entertain the government's argument that even if the scope of the search were to be limited to weapons, a search of the eyeglass case would have been appropriate.